UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: VAUGHAN COMPANY, REALTORS,　　　　　　　　　　Case No. 10-10759

　　　　Debtor.

---

JUDITH A. WAGNER, Chapter 11 Trustee
Of the bankruptcy estate of the Vaughan Company,
Realtors,

　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　　　　　　Adv. No. 11-1226

KENNETH J. EBERHARD, *et al*

　　　　Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Motion for Partial Summary Judgment as the Timing and Amount of Transfers (the "Motion") filed by the Plaintiff. *See* Docket No. 45. Judith Wagner, Chapter 11 Trustee of the bankruptcy estate of the Vaughan Company Realtors (the "Trustee") seeks judgment in her favor on her claims under 11 U.S.C. § 548 and New Mexico's version of the Uniform Fraudulent Transfer Act ("UFTA"), N.M.S.A. 1978 §§ 56-10-18(A)(1) and (2). After consideration of the Motion, Kenneth Eberhard's response, and the supporting papers, and being otherwise sufficiently informed, the Court finds the Motion should be granted, in part, and denied, in part, as described below.

### SUMMARY JUDGMENT STANDARDS

Summary judgment, governed by Rule 56, Fed.R.Civ.P., will be granted when the movant demonstrates that there is no genuine dispute as to a material fact and that the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a), made applicable to adversary

1

proceedings by Rule 7056, Fed.R.Bankr.P.  "[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  In considering a motion for summary judgment, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995) (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F2d 1238, 1241 (10th Cir. 1990)).  "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial" through affidavits or other supporting evidence.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed .2d 202 (1986).

## FACTS NOT SUBJECT TO GENUINE DISPUTE

1. Kenneth Eberhard invested a total of $445,500 in Vaughan Company Realtors' ("VCR") promissory note program.  *See* Trustee's Motion, ¶ 2; Kenneth Eberhard's Answer to Trustee's Request for Admissions, attached to the Trustee's Motion as Exhibit A ("Eberhard's Discovery Responses"), p. 1 of 2; Kenneth Eberhard's Response to Motion for Summary Judgment on Timing and Amount of Transfers ("Eberhard's Response"), ¶ 2.

2. From 2000 through February 22, 2010, VCR transferred $726,267.79 to Dr. Eberhard through his self-directed individual retirement account ("IRA").  *See* Trustee's Motion, ¶ 3; Kenneth Eberhard's Supplemental Responses to Trustee's Request for Admissions, attached

2

to the Trustee's Motion as Exhibit B ("Eberhard's Supplemental Discovery Responses"), p. 6 of 10.[1]

3. From February 22, 2006 through February 22, 2010, VCR transferred $369,469.29 to Dr. Eberhard through his IRA. *See* Trustee's Motion, ¶ 4; Eberhard's Supplemental Discovery Responses, p. 6 of 10.

4. From February 22, 2008 through February 22, 2010, VCR transferred $177,902.30 to Dr. Eberhard through his IRA. *See* Trustee's Motion, ¶ 5; Eberhard's Supplemental Discovery Responses, p. 6 of 10.

5. VCR transferred a total of $280,767.79 more to Dr. Eberhard than he paid to VCR. *See* Trustee's Motion, ¶ 6; Undisputed facts No. 1 and 2.

6. Between 2003 and 2010, Dr. Eberhard received the following distributions from his IRA:

| Year | Amount |
|------|--------|
| 2003 | $30,000 |
| 2004 | $80,000 |
| 2005 | $55,000 |
| 2006 | $60,000 |
| 2007 | $80,000 |
| 2008 | $80,000 |
| 2009 | $90,000 |
| 2010 | $30,000 |

*See* Eberhard's Response, ¶ 4; IRS Forms 1099 (2003-2010), attached as Exhibit A to Eberhard's Response.

---

[1] In his discovery responses, Dr. Eberhard denies the facts set forth in paragraphs 2, 3, and 4 on the basis that payments were to his IRA, not to him personally. Dr. Eberhard has not disputed the amounts or that VCR paid those amounts to his IRA.

7. VCR filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 22, 2010 (the "Petition Date"). *See* Docket No. 1 in Case No. 10-10759.

8. The Trustee commenced the above-captioned adversary proceeding on December 16, 2011. *See* Trustee's Complaint, Docket No. 1 in Adv. No. 11-1226.

DISCUSSION

I. Whether the Trustee Has Established the Prima Facie Elements of Her Claims for Actual and Constructive Fraud

The Trustee seeks to establish the requisite elements of her actual and constructive fraud claims against Dr. Eberhard under 11 U.S.C. § 548 and N.M.S.A. 1978 § 56-10-18(A). Claims for actual fraud require a showing of: "(1) a transfer of an interest of the debtor in property; (2) made within two [or four] years before the debtor filed for bankruptcy; and (3) done with actual intent to hinder, delay, or defraud the debtor or any entity the debtor would become after the transfer." *See In re The 1031 Tax Group, LLC*, 439 B.R. 47, 68 (S.D.N.Y.Bankr.2010) (quoting 11 U.S.C. § 548(a)(1)(A)).[2] Claims for constructive fraud generally require a showing that the debtor: (1) transferred property within two or four years before the bankruptcy filing; (2) received less than reasonably equivalent value for the transfer; and (3) was insolvent (or some equivalent) at the time of the transfer. *See generally* 11 U.S.C. § 548(a)(1)(B); N.M.S.A. 1978 §§ 56-10-18(A)(1)(2), 56-10-19.

The Court previously found that, to extent a transfer was made to Dr. Eberhard within four years before the Petition Date: (1) each transfer constituted an interest of VCR in property; (2) each transfer was made with the actual intent to defraud creditors; (3) VCR received less than

---

[2] The UFTA, N.M.S.A. § 56-10-18(A)(1), which contains similar elements, uses a four-year look-back period. *See* N.M.S.A.1978 § 56-10-23 (establishing a four year statute of limitations on pursuing fraudulent transfer actions under New Mexico law); *In re Strom*, 2013 WL 265071, *3 n. 5 (Bankr.D.N.M. 2013) ("The New Mexico UFTA has a four-year 'look-back' period.").

4

reasonably equivalent value in exchange for the transfer of any returns in excess of Dr. Eberhard's original investment; (4) on the date of each transfer, VCR was insolvent and/or believed (or reasonably should have believed) it would incur debts beyond its ability to repay. *See Wagner v. Oliva, et al,* 500 B.R. 778 (Bankr.D.N.M. 2013). The only remaining issue with respect to the Trustee's prima facie case against Dr. Eberhard is whether, and to what extent, the transfers to Dr. Eberhard actually occurred.

Here, the facts not subject to genuine dispute establish that Dr. Eberhard, through his IRA, received $177,902.30 from VCR within two years before the Petition Date and $369,469.29 from VCR within four years before the Petition Date. The Trustee has also established that Dr. Eberhard, through his IRA, received $280,767.79 more from VCR than he invested.

### A. *Whether Payments to the IRA Constitute Payments to Dr. Eberhard.*

Although Dr. Eberhard does not specifically dispute the numbers proffered by the Trustee, he argues that her calculations are incorrect. First, he contends that because the funds were transferred to his IRA and not to him personally, he is only liable to the extent he received distributions from his IRA. This argument is unavailing. A self-directed IRA, like a savings account, is not a separate legal entity from its owner. *See, e.g., U.S. v. Bailey,* 2012 WL 569744, *5, n.5 (W.D.N.C. 2012) (noting that "[b]ecause an IRA is not a separate legal entity from its owner," the owner of the IRA is the true beneficial owner of the property deposited therein); *Myers v. Walker,* 61 S.W.3d 722, 726 n.1 (Tex. App. 2001) (suggesting that the owner of an IRA is not distinct from the IRA).[3] Applying this principle, a number of courts have held that, for purposes of calculating "current monthly income" as that phrase is defined in 11 U.S.C. § 101(10A), any funds deposited into a debtor's IRA are received by the debtor as income even if

---

[3] *See also In re Vogel,* 78 B.R. 192, 194 (Bankr.N.D.Ill. 1987) ("Neither the IRA nor the Keough plan is a separate entity. The property in both accounts remains the Debtor's property.").

5

the funds have not been distributed from the IRA to the debtor. *In re Zahn,* 391 B.R. 840, 845 (8th Cir. BAP 2008) (noting that an individual "does not 'receive' income, for purposes of calculating "current monthly income," when he takes a voluntary distribution from an IRA because the IRA already belongs to the [individual]."); *Simon v. Zittel,* 2008 WL 750346, *3 (Bankr.S.D.Ill. 2008) (finding that the debtors received certain funds on the date those funds were deposited into their retirement accounts and noting that "presence of penalties and taxes … does not make the funds any more unavailable than funds in a checking account").[4] These courts point out that funds deposited into an IRA are treated as income - for purposes of Section 101(10A) - to the account owner because the funds are "available for the [owner's] use, just as if the [owner] had deposited them into a checking or savings account." *Simon,* 2008 WL 750346 at *3.

Similarly, an IRA functions like a self-settled revocable trust. The assets of such trusts are owned by the debtor, and thereby become property the bankruptcy estate, for purposes of 11 U.S.C. § 541(a). *See In re Kester,* 339 B.R. 749 (10th Cir. BAP 2006) (finding that the assets of a self-settled revocable trust owned by the debtors constituted property of the estate).[5] The owner of a self-settled revocable trust - like the owner of a self-directed IRA - can access its assets at any time.

---

[4] *See also In re Wayman*, 351 B.R. 808, 811 (Bankr.E.D.Tex.2006) (holding that a debtor receives income placed in her retirement account "when the account was placed in her separate name and the funds came within 'her care, custody and control.'"); *In re Cram,* 414 B.R. 674, 681 (holding that "the funds held in … [a retirement account] were "received" as income when they were earned and deposited into that account").

[5] *See also In re Reuter,* 427 B.R. 727, 774-775 (Bankr.W.D.Mo. 2010) (a revocable trust in which debtor had an interest became property of the estate upon commencement of the bankruptcy case); *Askanase v. LivingWell, Inc*., 45 F.3d 103, 106 (5th Cir. 1995) ("Any interest which a debtor retains in a trust is property of the estate, including the power to amend the trust and the power to revoke a revocable trust and recover the remaining funds in the trust for the benefit of the creditors.")

Here, Dr. Eberhard had access to and control over the funds in his IRA from the date the funds were deposited. For fraudulent transfer purposes, even if not for income tax or exemption purposes, the transfer of funds by a third party to an individual's IRA has the same legal effect as if the funds were transferred directly to that individual.

Further, even if the Court were to assume that the transfers were made to the IRA, as a separate entity from Dr. Eberhard, the Trustee could still recover those transfers from Dr. Eberhard individually. The Bankruptcy Code and the UFTA allow for recovery from the initial transferee or from "an entity for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1); N.M.S.A. 1978 § 56-10-22(B)(1). The term "entity" includes a person, and the term "person" includes an individual. 11 U.S.C. §§ 101(15), (41). Because the IRA was established for the benefit of Dr. Eberhard, any transfers to the IRA were also necessarily for his benefit. *See, e.g., Janvey v. Alguire,* 2013 WL 2451738, \*11 (N.D.Tex. 2013) (all payments made by the Ponzi perpetrator to the investor-defendant's IRA were recoverable from the investor-defendant individually); *In re Nolan,* 2011 WL 5884222, \*5 (Bankr.D.Or. 2011) (noting that pursuant to Section 550(a), the trustee was entitled to recover payments made to the defendant's IRA custodian directly from the defendant).

The Court concludes that the Trustee correctly considered all of the payments by VCR to the IRA when calculating the timing and amount of the transfers to Dr. Eberhard. In the event she recovers at all, the Trustee is entitled to recover from Dr. Eberhard any amounts transferred to his IRA.

### B. *Whether the Trustee Properly Calculated Principal and Profits*

Next, Dr. Eberhard challenges the Trustee's method for calculating "net winnings," (*i.e.* any amounts received in excess of a defendant's initial investment). Dr. Eberhard complains
7

that, in calculating his total investment, the Trustee failed to account for the amounts attributable to any investments in previous notes that were reinvested, or "rolled over," into new notes.

In determining the extent of liability in cases involving a Ponzi scheme, courts apply the so-called "netting rule." Under that rule, "[a]mounts transferred by the Ponzi scheme perpetrator to the investor are netted against the [total] … amounts invested by that individual." *Donell v. Kowell,* 533 F.3d 762, 771 (9th Cir. 2008). As one court explained:

> If a given defendant received less than his undertaking, the amounts received should be considered return of principal, regardless of how the parties' may have designated them. On the other hand, to the extent all transfers to a defendant exceeded his undertaking, the amounts should be considered so-called earnings [net-winnings], regardless of the parties' designation.

*In re Independent Clearing House Co.,* 77 B.R. 842, 851 n. 14 (D.Utah 1987). *See also Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec, LLC (In re Madoff Sec.),* 476 B.R. 715, 729 (S.D.N.Y.2012) (adopting the "netting rule"); *In re M & M Marketing, L.L.C.,* 2014 WL 32137, *4 (Bankr.D.Neb. 2014) (same); *cf In re Hedged–Inv. Assocs., Inc.),* 84 F.3d 1286, 1289 (10th Cir.1996) (suggesting that the liability of an investor depends on whether they received payments from the Ponzi-perpetrator in excess of their original investment). The actual amount of liability depends "on factors such as whether transfers were made within the limitations period or whether the investor lacked good faith." *Donell,* 533 F.3d at 771.

Here, the Trustee calculated net winnings by netting the total amount of cash invested against the total amount of cash received. To calculate the principal amount, the Trustee started with the first investment and added any additional cash investments that increased the amount owing under the promissory note. In instances where the investor did not invest additional cash, but simply reinvested, or "rolled over" the principal balance of a previous note into a new note, the Trustee did not increase the total principal amount invested.

8

The Court finds that the Trustee's method of calculation is consistent with the "netting rule." Dr. Eberhard's total investment reflects all cash he invested in the note program over the life of his investments, and his total return reflects all payments his IRA received.

Based on the foregoing, the Trustee has established all prima facie elements of her claims for actual and constructive fraud, including the timing and amount of the transfers.

> II. Whether the Trustee is Entitled to a Judgment in the Amount of the Any Returns in Excess of Dr. Eberhard's Initial Investment

The Trustee seeks a money judgment in the amount of the net winnings. She asserts that, even if Dr. Eberhard received the transfers in good faith, that defense only protects him to the extent of the his initial investment.

Section 548(c) of the Bankruptcy Code and the UFTA provide a transferee with an affirmative defense where the transferee acts in good faith and provides value to the debtor in exchange for the transfer. *See* 11 U.S.C. § 548(c) ("[A] transferee … that takes for value and in good faith has a lien on or may retain any interest transferred … to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation."); N.M.S.A. 56-10-22(A) (A transfer or obligation is not voidable … against a person who took in good faith and for a reasonably equivalent value."). In *Wagner v. Oliva,* the Court found that a Ponzi perpetrator does not receive reasonably equivalent value in exchange for its transfer of net winnings. *See Wagner v. Oliva, et al,* 500 B.R. 778, 794 (Bankr.D.N.M. 2013). The Tenth Circuit has gone a step further and held that a Ponzi perpetrator "receive[s] *no value* in exchange for the transfer[]" of net winnings. *In re Hedged-Investments Associates, Inc.,* 84 F.3d 1286, 1290 (10th Cir. 1996) (emphasis added). Consequently, "to the extent that investors have received payments in excess of the amounts they have invested, those payments are [generally] voidable as fraudulent transfers," notwithstanding the investor's good faith. *In re Bayou Group,*

9

*LLC,* 362 B.R. 624, 636 (S.D.N.Y. 2007) (collecting cases); *Donell v. Kowell,* 533 F.3d 762, 771 (9th Cir. 2008) (noting that "the "good faith' defense … [only] permits an innocent investor to retain funds up to the amount of the initial outlay").[6]

Here, Dr. Eberhard received $280,767.79 more from VCR than he invested. To the extent that amount constitutes net winnings, the good faith defense will not prevent the Trustee from recovering it.[7] Nevertheless, the Court believes it is more appropriate to enter a single money judgment after a trial on the merits.

### III. Whether the Trustee is Entitled to a Money Judgment on the Remaining Claims

Finally, the Trustee seeks a money judgment with respect to her remaining claims under 11 U.S.C. § 548(a) and N.M.S.A. 1978 § 56-10-18(A). She contends that the asserted defenses are inapplicable or without merit. Dr. Eberhard argues that all preserved defenses should be

---

[6] *See also Perkins v. Haines,* 661 F.3d 623 (11th Cir. 2011) (holding that the good faith defense under Section 548(c) can only protect Ponzi investors to the extent of their original investment); *Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Securities LLC,* 499 B.R. 416, 422-426 (S.D.N.Y. 2013) (concluding that for purposes of Section 548(c), investors only give "value" to the extent of their original investment); *In re Maui Indus. Loan & Finance Co., Inc.,* 2013 WL 2897792, *6 (D.Hawaii 2013) (noting that the "good faith defense … permits an innocent winning investor to retain funds up to the amount of the initial outlay"); *In re LLS America, LLC,* 2013 WL 3305393, *14 (Bankr.E.D.Wash. 2013) (same).

[7] Dr. Eberhard asserts several other defenses in additional to the good faith defense. A number of those defenses may be based on alleged pre-petition wrongdoing by VCR. However, because the Trustee does not stand in the shoes of the pre-petition Debtor as to her claims under Sections 544(b), 547, and 548, VCR's pre-petition wrongdoing does not taint the claims. *See Wagner v. Wilson, (In Re Vaughan Company Realtors),* 2013 WL 960143, * 6 (Bankr.D.N.M. 2013) (holding that fraudulent transfer claims asserted by a bankruptcy trustee are not tainted by the debtor's wrongoing); *In re Personal and Business Ins. Agency,* 334 F.3d 239, 246-247 (3rd Cir. 2003) (holding that a debtor's conduct is not imputed to the trustee in an avoidance action under Section 548); *Terlecky v. Abels,* 260 B.R. 446, 453 (S.D.Ohio 2001) ("[T]he fact that the [d]ebtors participated in the fraudulent scheme does not … bar the [t]rustee from pursuing … fraudulent conveyance claims."). Dr. Eberhard also asserts a setoff defense. There is substantial authority for the proposition that liability on a fraudulent transfer claim cannot be offset against a general unsecured claim against the debtor. *See, e.g., Wing v. Dockstader,* 2012 WL 2020666, *4 (10th Cir. 2012) (observing that in the context of a Ponzi scheme, "allowing offsets would frustrate the purposes of the UFTA"); *In re Acequia, Inc.,* 34 F.3d 800, 817 (9th Cir. 1994) (noting that "setoffs ... do not apply to actions by the Trustee to recover fraudulent transfers"); *In re Singh,* 434 B.R. 298, 308 (Bankr.E.D.N.Y. 2010) ("It is well established that a party will be unable to assert a setoff where the party is being sued for fraudulent transfers.").

10

examined at trial.  Neither party offered evidence upon which the Court can examine the viability of any of the defenses.

The Trustee contends that she is entitled to a money judgment because Dr. Eberhard failed to carry his burden with respect to each asserted affirmative defense.  On a motion for summary judgment, the movant "bears the initial burden of demonstrating an absence of a genuine issue of material fact."  *1-800 Contacts, Inc. v. Lens.com, Inc.,* 722 F.3d 1229, 1242 (10th Cir. 2013).  With respect to an issue on which the movant does not bear the burden of proof at trial, the movant can satisfy that burden by: (1) presenting evidence to negate an essential element of the nonmovant's claim or defense: or (2) "indicating to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's case."  *Id.  See also Water Pik, Inc. v. Med-Systems, Inc.,* 726 F.3d 1136, 1144 (10th Cir. 2013) ("[I]f the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue.").   Once movant has done one of these things, "the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial."  *1-800 Contacts,* 722 F.3d at 1242.

The Trustee's arguments (*i.e.* that Dr. Eberhard failed to make a sufficient showing with respect to several claimed affirmative defenses) would ordinarily trigger his duty to come forward with evidence regarding his claims.  Nevertheless, the Court, in exercising its discretion under Rule 56, finds that it is not appropriate to enter a money judgment at this time.  *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 3d § 2728, pp. 525-26 (1998) (collecting cases for the proposition that even where the movant

11

satisfies its initial burden, "the court has discretion to deny a Rule 56 motion … when it has any doubts as to the wisdom of terminating the action prior to a full trial").[8] It appears that Dr. Eberhard believed the Motion, which sought "Partial Summary Judgment as to the Timing and Amount of Transfers," should be limited to just that. As neither the caption of the Motion nor the prayer for relief explicitly asks the Court for judgment on (or to overrule) the affirmative defenses, the Court agrees. Further, in order to fully decide this case on the merits, the Court must determine the validity of Dr. Eberhard's good faith defense. Though no facts before the Court relate to the affirmative defenses, a trial on the merits is set in roughly one week. Under these circumstances, Court declines to enter a money judgment until the affirmative defenses have been examined at trial.

## CONCLUSION

Based on the foregoing, the Trustee's Motion for Summary Judgment will be granted, in part, and denied, in part. The Court will enter judgment in the Trustee's favor on the grounds that she has established all prima facie elements of her claims under: (1) 11 U.S.C. §§ 548(a)(1)(A) and (B); and (2) N.M.S.A. 1978 §§ 56-10-18(A)(1) and (2). The Court will deny the Trustee's Motion to the extent she seeks a money judgment on those claims and will address any remaining defenses at trial. The Court will enter a separate judgment consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

---

[8] In addition, the Court has the discretion to give Dr. Eberhard an additional opportunity to offer evidence in support of his affirmative defenses. *See* Fed.R.Civ.P. 56(e) ("If a party fails to … properly address another party's assertion of fact as required by Rule 56(c), the court may … (1) give an opportunity to properly support or address the fact."). Because the trial setting is just around the corner, the Court will give Dr. Eberhard an opportunity to offer evidence at trial in support of his affirmative defenses.

Date entered on docket: January 23, 2014

COPY TO:

James Askew, Edward Mazel, & Daniel White
Askew & Mazel, LLC
320 Gold Ave S.W.
Suite 300A
Albuquerque, NM 87102

Walter L Reardon, Jr
3733 Eubank Blvd NE
Albuquerque, NM 87111-3536